# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| RASHAN HUNT,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>WARDEN LASHANN EPPINGER,<br><br>　　　　　　Respondent. | CASE NO. 1:20-cv-2666-DAR<br><br>DISTRICT JUDGE DAVID A. RUIZ<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Rashan[1] Hunt ("Petitioner" or "Mr. Hunt") brings this habeas corpus petition (ECF Doc. 1 ("Petition")) pursuant to 28 U.S.C. § 2254 based on his convictions in Cuyahoga County Common Pleas Court Case No. 618512-17-CR for: voluntary manslaughter, with notice of prior conviction and a repeat violent offender specification; felonious assault, with notice of prior conviction and a repeat violent offender specification; tampering with evidence; gross abuse of a corpse; and two counts of obstructing official business (ECF Doc. 7, pp. 1-2; ECF Doc. 7-1, pp. 6-8).  The Petition was filed on November 19, 2019 (ECF Doc. 1), Respondent filed an Answer/Return of Writ (ECF Doc. 7 ("Answer")), and Petitioner filed his traverse in response (ECF Doc. 12 ("Traverse")).  The matter is fully briefed and ripe for decision.

The matter was reassigned to the undersigned Magistrate Judge on October 1, 2021.  For the reasons set forth herein, the undersigned recommends that the Court: **DISMISS** and/or **DENY** Grounds One and Two; **DENY** Ground Three; and **DISMISS** Grounds Four and Five.

---

[1] The undersigned notes that in certain documents prepared or signed personally by Petitioner, his first name is spelled "Rashad."  (*See, e.g.,* ECF Doc. 1, p. 16 (signature of Petitioner) *but compare with id.* at 1 (caption in Petition).)  Because most record references—including the Petition caption, trial court transcript and state court opinions—use the spelling "Rashan," the undersigned adopts the same while noting the discrepancy.

## I.      Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Court of Appeals, Eight Appellate District, Cuyahoga County, Ohio, summarized the facts of this case as follows:

> {¶2} On March 30, 2015, Hunt and Bryant went to a hotel to engage in sexual activity. Bryant allegedly attempted to rob Hunt and sprayed him with mace. A struggle ensued that resulted in Bryant's death. Hunt picked up his cousin, purchased a large tote bag at WalMart, transported the body to Elyria where, unable to burn the body, he buried it.
>
> {¶3} The mother of Hunt's children told the Federal Bureau of Investigation that Hunt returned to their home that night covered in mud and scratches. Hunt subsequently told police that he dropped Bryant off after they left the hotel.
>
> {¶4} Though investigators were unable to locate the body, as the result of evidence acquired during the ongoing investigation, Hunt was arrested in California in June 2017. Hunt ultimately confessed, and Bryant's body was recovered.

*State v. Hunt*, 2019-Ohio-1643, ¶¶2-4, 2019 WL 1976021, *1 (Ohio Ct. App. May 2, 2019); (ECF Doc. 7-1, pp. 82-107).

Petitioner disputes only the accuracy of the state appellate court's use of the term "allegedly" with respect to the attempted robbery, arguing "there was certainly an attempted robbery."  (ECF Doc. 12, p. 2.)  The undersigned finds Petitioner's limited argument on this point inadequate to support a finding by clear and convincing evidence that any part of the appeals court's factual finding was unsupported or incorrect.  *See* 28 U.S.C. Sec 2254(e)(1).

## II.     Procedural Background

### A.     State Court Conviction

On July 5, 2017, the Cuyahoga County grand jury charged Mr. Hunt with: voluntary manslaughter in violation of Ohio Revised Code § 2903.03(A), with a notice of prior conviction and a repeat violent offender specification ("RVO") (count 1); felonious assault in violation of Ohio Revised Code § 2903.11(A)(1), with a notice of prior conviction and a repeat violent offender specification (count 2); tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1) (count 3); gross abuse of a corpse in violation of Ohio Revised Code § 2927.01(B) (count 4); and two counts of obstructing official business in violation of Ohio Revised Code § 2921.31(A) (counts 5, 6). (ECF Doc. 7-1, pp. 6-8.)  Mr. Hunt initially pleaded not guilty to all charges. (ECF Doc. 7, p. 3; ECF Doc. 12, p. 3.)

During the pre-trial proceedings, Mr. Hunt filed a pro se motion to strike the RVO specification as unconstitutional.  (ECF Doc. 7-1, pp. 16-28.)  He argued that the RVO specification permitted a sentence to be enhanced based on judicial fact-finding and did not allow for a jury trial. (*Id.* at 17.)  At the March 5, 2018 final pre-trial conference, the court advised Mr. Hunt that the motion must be filed by defense counsel.  (ECF Doc. 7-2, p. 14.)  Defense counsel stated that he reviewed the motion and believed it had no foundation in law in the case.  (ECF Doc. 7-2, pp. 14-16.)  The parties engaged in an in-depth discussion of the grounds for the RVO, with the judge explaining to Petitioner that the RVO could only be applied if the trial court imposed a maximum sentence on the underlying manslaughter count, and that both imposition of the RVO and the term of the RVO were within the trial court's discretion. (*Id.* at 16-18.)  After the court explained the process of applying a penalty under the RVO

specification, Mr. Hunt was asked whether the explanation helped him in understanding how the RVO worked; he responded that it did.  (*Id*. at 19-20.)

On March 12, 2018, Mr. Hunt pleaded guilty to voluntary manslaughter with a notice of prior conviction and an RVO specification (count 1), tampering with evidence (count 3), gross abuse of a corpse (count 4), and two counts of obstructing official business (counts 5, 6). The State amended the indictment to nolle the felonious assault charge (count 2). (*Id.* at 49).

**B.     Direct Appeal**

On April 25, 2018, Petitioner filed a notice of appeal with the Eighth District Court of Appeals through appellate counsel.  (ECF Doc. 7-1, pp. 40-41.)  He raised the following three assignments of error in his July 25, 2018 brief:

I.   The trial court's sentence was contrary to law.

II.   The record does not support the findings that consecutive sentences were appropriate.

III.  The appellant received ineffective assistance of counsel.

(ECF Doc. 7-1, pp. 51, 56, 60.)  The state filed its response on September 13, 2018. (*Id.* at pp. 65-80.)

In a written decision dated May 2, 2019, the Eighth District Court of Appeals affirmed the trial court, holding that: the imposition of consecutive sentence was proper; Petitioner was properly found to be a repeat violent offender; the consecutive sentences were not disproportionate to the seriousness of the crime; and Petitioner had not proven ineffective assistance of trial counsel because there was no indication on the record of a breakdown in communication.  *See Hunt*, 2019-Ohio-1643, 2019 WL 1976021.

Petitioner's subsequent pro se motion for reconsideration under Ohio Appellate Rule 26(A) was denied on August 7, 2019.  (ECF Doc. 7-1, p. 128.)

4

On September 12, 2019, Petitioner filed a timely notice of appeal to the Ohio Supreme Court, proceeding pro se.  (ECF Doc. 7-1, p. 130.)  In his memorandum in support of jurisdiction, he raised the following propositions of law:

> I.  Hunt's 19 year sentence on Count 1 is contrary to law, in violation of his Due Process protections, and amounts to cruel and unusual punishment, under the Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution
>
> II.  The consecutive sentences imposed by the trial court are contrary to law, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution
>
> III.  Hunt received ineffective assistance of trial counsel in violation of the Sixth Amendment to the U.S. Constitution and Article, I, Section § 10 of the Ohio Constitution.

(*Id.* at p. 134.)   The Ohio Supreme Court declined to accept jurisdiction on November 12, 2019, pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4).  (*Id.* at p. 178); *State v. Hunt*, 157 Ohio St.3d 1485 (Table) (2019).  The United States Supreme Court denied Petitioner's petition for a writ of certiorari on June 12, 2020.  (ECF Doc. 7-1, p. 247.)

## C.      26(b) Motion to Reopen

On July 19, 2019, Mr. Hunt filed a pro se application to reopen his appeal pursuant to Ohio App. R. 26(B) based on the alleged ineffective assistance of appellate counsel.  (ECF 7-1, p. 249-267.)  He claimed that appellate counsel for his direct appeal had provided ineffective assistance for failing to raise the following claims on direct appeal:

> 1. The trial court breached Hunt's plea agreement by sentencing him for a repeat violent offender specification (RVO) to which [Hunt] did not plead guilty.
>
> 2. Hunt's constitutional protection against Double Jeopardy was violated when the trial court failed to merge Count 3 tampering with the evidence and Count 4 gross abuse of a corpse as allied offenses of similar import.

(*Id.* at 250.)  The State opposed reopening the appeal.  (*Id.* at 269-277.)  The Eighth District

Court of Appeals denied the application for reopening on September 30, 2019.  (*Id.* at 279-291);

*State v. Hunt,* 145 N.E.3d 1214 (Ohio Ct. App. 2019).  The court limited its review to one of

"plain error" because Petitioner did not raise his two proposed assignments of error before the

trial court.  *Hunt*, 145 N.E.3d at 1216-17, 1220.  As to the first assignment of error, the court

held "[i]t was not plain error for the trial court to impose sentence on the RVO specification" and

"[a]ppellate counsel was not ineffective for failing to raise this issue" on direct appeal.  *Id.* at

1220.  As to the second assignment of error, the court found Mr. Hunt failed "to carry his burden

of showing that there is a reasonable probability that the offenses are allied offenses of similar

import," and also failed to show that appellate counsel was ineffective for not raising the issue on

direct appeal.  *Id.* at 1221.

On October 30, 2019, the appellate court denied Hunt's motion for reconsideration of the

decision on his application for reopening under App. R. 26(A), finding the motion untimely and

procedural rule inapplicable to applications for reopening.  (ECF Doc. 7-1, p. 308).

Hunt filed a pro se appeal with the Ohio Supreme Court, asserting the following

propositions of law in support of jurisdiction:

> I.   The trial court effectively breached Hunt's plea agreement and/or otherwise
> violated his Due Process protections under the Fifth and Fourteenth Amendments
> to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution, when
> it sentenced him for a repeat violent offender (RVO) specification to which he did
> not plead guilty.
>
> II.   The trial court failed to merge tampering with evidence and gross abuse of a
> corpse as allied offenses of similar import, in violation of Hunt's Double Jeopardy
> and Due Process protections under the Fifth and Fourteenth Amendments to the
> U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> III. Hunt received ineffective assistance of appellate counsel, and the Eighth
> District denied Hunt his Due Process protections by denying his App. R. 26(B)
> application for reopening, in violation of the Sixth and Fourteenth Amendments to
> the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

(*Id.* at 318-342.)  On January 21, 2020, the Supreme Court of Ohio declined jurisdiction. (*Id.* at 344); *State v. Hunt,* 157 Ohio St.3d 1539 (Table) (2020).

## D.    **Federal Habeas Corpus Petition**

Petitioner filed a federal habeas corpus petition pro se on November 19, 2020, under 28 US.C. §2254.  (ECF Doc. 1.)  He raises five grounds for relief in the Petition, as follows:

**GROUND 1:** Hunt's 19-year sentence on Count 1 is contrary to law, in violation of his Due Process protections, and amounts to cruel and unusual punishment, under the Eighth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Facts:** Hunt pleaded guilty in Count 1 to voluntary manslaughter under Section § 2903.03(A) of the Ohio Revised Code, a first degree felony subject to a penalty of 3 to 11 years imprisonment, for which he was sentenced to the maximum term of 11 years. On the same count he was sentenced to an additional 8 years of imprisonment for a repeat violent offender (RVO) specification to which he did not actually plead guilty (as will be taken up in Ground Four), that ran consecutive for a total sentence on Count 1 of 19 years. In imposing this sentence, the trial court judge opined that, "I do think the maximum amount of time periods I've mentioned for the counts I've mentioned are appropriate." (Tr. 81) A Sentencing Memorandum presented to the trial court at Hunt's sentencing hearing revealed the following facts:

Rashan Hunt and [the victim] Tierra Bryant were friends and sexual partners for an extended time. Although they each had a significant other.

They enjoyed a sexual relationship with each other. They would often meet and go to the Motel 6 to engage in their sexual relationship. However, on March 30, 2015, Tierra Bryant had other plans than just to have sex with Rashad Hunt. She planned to rob him and cause him physical harm. She discussed her plan with her friend, Ashante Sullivan. She said that while she was performing oral sex on him, she would mace him and steal his money. She made arrangements with Ashante and her boyfriend Antonio Etheridge to pick her up at th [*sic*] Motel 6 after she robbed Hunt.

Ashante told this to the Middleburg Hts. Police on June 17, 2015 and subsequently mad [*sic*] a proffer to the FBI on January 28, 2016, confirming the plans to rob Rashad Hunt.

While at the Motel, during their sxual [*sic*] encounter, Tierra **Bryant was texting** [emphasis in original] Ashante telling her what Hunt was doing to her and that she was getting ready to mace him and rob him.

7

She did in fact mace him to the point where he could not see anything. He pushed her to get her off him and he felt he was struggling for his life. He pushed her with sufficient force causing her to strike her head on a door jamb. Still blinded by the mace he tried to nwash [*sic*] it out of his eyes in the bathroom.

When he came out, Tierra was still not moving. He tried to check her out but discovered that she was not breathing.

\* \* \* \*

The FBI, during their investigation, had learned that Tierra Bryant had maced another man, prior to using the mace on Rashad. Wanda Leverette told the FBI that Tierra had maced her son, Shawn Leverette.

(Sentencing Memorandum)

**GROUND 2:** The consecutive sentences imposed by the trial court are contrary to law, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Facts:** Hunt was sentenced to 19 years for Count 1, voluntary manslaughter plus a repeat violent offender specification, 3 years for Count 3, tampering with evidence, and 1 year for Count 4, gross abuse of a corpse. The sentences for these three counts were ordered to be served consecutively for a total prison term of 23 years. In support of consecutive sentences the trial court judge offered the following reasoning: "I do think it's also appropriate in this situation to run these counts consecutive to each other... And I think that's appropriate because of the circumstances involved in this case, and that's based on Mr. Hunt's criminal record, specifically the prior attempted murder and there is a statutory finding that I must make if I'm going to do consecutive sentences. And I do think that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that he poses to the public, and if the Court also finds at least one of the following, and based on his criminal conduct it demonstrates that consecutive sentences are necessary to protect the public from future harm by the offender." (Tr. 81-84) See also Sentencing Memorandum as quoted in Ground One.

**GROUND 3:** Hunt received ineffective assistance of trial counsel in violation of the Sixth Amendment to the U.S. Constitution, where he received no substantive benefit by pleading guilty rather than going to trial, and where counsel failed to object to the 8 year sentence imposed for a repeat violent offender specification to which Hunt did not plead guilty

**Supporting Facts:** Hunt was indicted on the following felony charges: Count 1, voluntary manslaughter under O.R.C. 2903.03(A), a first degree felony, with a notice of prior conviction under O.R.C. 2929.13(F)(6) and a repeat violent offender

specification (RVO) under O.R.C. 2941.149; Count 2, felonious assault under O.R.C. 2903.1 l(A)(l), a second-degree felony; Count 3, tampering with evidence under O.R.C. 2921.12(A)(l), a third degree felony; Count 4, gross abuse of a corpse under O.R.C. 2927.0l(B), a felony of the fifth degree. By statute, O.R.C. 2941.25(A), Counts 1 and 2 would have had to be merged under any conviction. Thus, had Hunt taken his case to trial and been found guilty on all counts the most he could have been sentenced to was 25 years: 19 years on Count 1 (11 years base plus 10 for the RVO), 3 years on Count 3 and 1 year on Count 4. In the plea agreement his trial counsel negotiated with the State of Ohio, Hunt was required to plead guilty to Counts 1, 3 and 4, while Count 2 (which would have merged with Count 1) was dismissed. Hunt was then sentenced to 23 years - only two less than the maximum term he could have received had he lost at trial. There is no evidence on the record that Hunt's trial counsel ever attempted to negotiate a deal in which Hunt would plead guilty on Count 1 to either an amended charge of involuntary manslaughter under O.R.C. 2903.04(B)(C) or reckless homicide under O.R.C. 2903.041, both third degree felonies, and both of which would have negated the RVO. Trial counsel also failed to object to the 8 year sentence imposed for the RVO after Hunt never pleaded guilty to the specification (see Ground Four).

**GROUND 4:** The trial court breached Hunt's plea agreement in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution, when it sentenced him for a repeat violent offender specification to which he did not plead guilty.

**Supporting Facts:** Hunt was charged in Count 1 with voluntary manslaughter. Count 1 included a notice of prior conviction (NPC) under O.R.C. 2929.1 3(F)(6) and a repeat violent offender (RVO) specification under O.R.C. 2941.149. While Hunt pleaded guilty to the base offense of voluntary manslaughter in Count 1 he never entered a plea of guilty to the RVO specification nor was a finding of guilt made of such by the trial court. The court record shows the following exchange taking place during the plea hearing between Hunt and the trial court:

THE COURT: So in light of all that you're changing your initial view of no contest to Count 1 to pleading guilty to voluntary manslaughter, a felony in the first degree. Is that correct?

[HUNT]: Yes.

THE COURT: All right. And Count 3, tampering with evidence, a felony in the third degree. How do you plead?

[HUNT]: Guilty.

THE COURT: And court 4, gross abuse of a corpse, felony in the fifth degree, how do you plead?

9

[HUNT]: Guilty.

THE COURT: Okay. Let the record reflect that Mr. Hunt has knowingly, voluntarily and with a full understanding of his rights entered in a change of plea with regard to Counts 1, 3, 4, 5 and 6. The Court accepts that change of plea and hereby makes a finding of guilty with regard to Count 1, voluntary manslaughter, a felony in the third [sic] degree, Count 3, guilty, tampering with evidence, felony in the third degree, guilty with regard to Count 4, gross abuse of a corpse ....If I didn't mention gross abuse of a corpse is a felony of the fifth degree, and the finding is guilty with regard to that count. (Tr. 46-48).

**GROUND 5:** The trial court failed to merge tampering with evidence and gross abuse of a corpse as allied offenses of similar import, in violation of Hunt's Double Jeopardy and Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Facts:** Hunt was indicted and pleaded guilty on Count 3 to tampering with evidence under O.R.C. 2921.1 2(A)(l), which states, "No person, knowing than an official proceeding or investigation is in progress, or is about to be or likely to be, instituted, shall do any of the following ... Alter, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Hunt was indicted and pleaded guilty on Count 4 to gross abuse of a corpse under O.R.C. 2927.0l(B), which states, "No person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities." Both offenses were premised on Hunt's having removed his deceased victim's body from the motel room and then burying it to conceal it from authorities. *See State v. Hunt,* 2019-0hio-1643 at ¶ 2.

(ECF Doc. 1, pp. 5-13.)  Respondent filed an Answer to the Petition.  (ECF Doc. 7.)

After filing the Petition pro se, Petitioner retained counsel on January 3, 2022 (ECF Doc.

9), and counsel filed the Traverse on March 27, 2022 (ECF Doc. 12).

### III.    Law & Analysis

**A.    Legal Standards**

**1.    Standard of Review Under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–

132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the

effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies."  (*Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c)).)  Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

Under § 2254(d)(1), "[a] decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  As explained by the Supreme Court, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' 28 U.S.C. § 2254(d)(1)" and "therefore cannot form the basis

11

for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Otte*, 654 F.3d at 599–600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting and citing 28 U.S.C. § 2254(d)(2)). The Sixth Circuit has explained that "[a] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record[]")(quoting and citing 28 U.S.C. § 2254(d)(2) and § 2254(e)(1)). *Matthews*, 486 F.3d at 889. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt*, 571 U.S. at 18 (internal citations and quotations omitted).

The Supreme Court has explained that under AEDPA "a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. The "standard is difficult to meet" and "was meant to be" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### 2.    Legal Standard for Procedural Default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").

To satisfy the fair presentation requirement, a habeas petitioner must present both the facts and legal theories underpinning his claims to the state courts. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 33-34 (2004); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th

Cir. 1987). A constitutional claim for relief must also be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

A petitioner must also meet certain procedural requirements to have his claims reviewed in federal court. *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, procedural default applies where state court remedies are no longer available. *See Williams*, 460 F.3d at 806.

Procedural default may occur in two ways. First, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* the Sixth Circuit articulated a four-prong analysis to be used when determining whether a claim is procedurally barred due to failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim, and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see*

*also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *See Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *State v. Moreland*, 552 N.E. 2d 894, 899 (Ohio 1990) (finding failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. Thus, even if the exhaustion requirement is technically satisfied because no state remedies remain available to the petitioner, the petitioner's prior failure to present those claims for consideration in state court may cause a procedural default that bars federal court review of the claims. *See Williams,* 460 F.3d at 806 (citing *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)).

To overcome procedural default, a petitioner must: (1) show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or (2) show that there will be a fundamental miscarriage of justice if the claims are not considered. *See Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

15

**B.**     **Grounds One and Two**

Petitioner asserts in Ground One that his "19-year sentence on Count 1 is contrary to law, in violation of his Due Process protections, and amounts to cruel and unusual punishment, under the Eighth and Fourteenth Amendments to the U.S. Constitution." (ECF Doc. 1, p. 5.) In Ground Two, he asserts that "[t]he consecutive sentences imposed by the trial court are contrary to law, in violation of [Petitioner's] Due Process protections under the Fifth and Fourteenth Amendments of the U.S. Constitution." (*Id.* at p. 7.)

Respondent argues that Grounds One and Two are procedurally defaulted and should be dismissed because they are not cognizable. (ECF Doc. 7, pp. 22-25.) Petitioner responds that his constitutional claims in Grounds One and Two have been preserved for habeas review, are cognizable, and should be granted on the merits. (ECF Doc. 12, pp. 8-22.) For the reasons set forth below, the undersigned concludes that Grounds One and Two should be **DISMISSED** based on procedural default, **DISMISSED** as non-cognizable, and/or **DENIED** on the merits.

**1.**     **Grounds One and Two are Procedurally Defaulted**

Respondent argues that Grounds One and Two are procedurally defaulted because Petitioner failed to present them as federal constitutional issues in the Ohio Court of Appeals. (ECF Doc. 7, pp. 24-25.) Petitioner addresses Grounds One and Two in tandem, stating that they "are interrelated as they both address aspect of the harsh sentence by the trial court" (ECF Doc. 12, p. 8), and contends that both grounds were "fairly presented" for habeas review (*id.* at p. 10).

Under the "fair presentation" standard, a federal habeas petitioner must present the facts and legal theories underpinning his claims to the state courts, *see McMeans*, 228 F.3d at 681, presenting those claims as federal constitutional issues, not merely issues arising under state law, *see, e.g., Baldwin*, 541 U.S. at 33-34; *Franklin*, 811 F.2d at 324-25. "Because state courts, like

16

federal courts, are required to enforce federal law, including rights asserted under the Constitution," the Sixth Circuit observes that "comity requires that the state courts should have the first opportunity to review the prisoner's federal claim and provide any necessary relief." *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 751 (6th Cir. 2021) (quoting *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005)). This way, state courts are "given the opportunity to see both the factual and legal basis for each claim," *id.* (quoting *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009)), before that claim is considered in connection with a federal habeas petition.

To determine whether a claim was "fairly presented," Sixth Circuit courts consider:

whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Nian*, 994 F.3d at 751 (citations and internal quotation marks omitted). A petitioner need not "recite 'chapter and verse' of constitutional law" to fairly present a claim. *Id.* (quoting *Wagner*, 581 F.3d at 415; *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)). Nevertheless, the Sixth Circuit "has generally found procedural default when a petitioner made bare assertions of denial of 'rights to a fair trial' or 'due process.'" *Nian*, 994 F.3d at 752 (citing *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004)).

Respondent argues that Mr. Hunt failed to present Grounds One and Two to the state court of appeals "as federal constitutional issues" in this case because he focused his arguments on "the trial court's failure to comply with Ohio's sentencing statutes in imposing sentence." (ECF Doc. 7, p. 25.) Mr. Hunt responds that he "properly preserved these claims for federal habeas review" because he wrote in his state court appellate brief that his sentences were "in violation of the Fifth and Four[t]eenth Amendments to the United States Constitution." (ECF

Doc. 12, p. 9.)  Indeed, Mr. Hunt did begin the argument in support of his first assignment of

error—whether the trial court's sentence was contrary to law—as follows:

> The Trial Court erred in sentencing [Mr. Hunt] to twenty-three (23) years in the
> instant matter.  <u>These sentences are in violation of the Fifth and Fourteen[th]</u>
> <u>Amendments to the United States Constitution</u>.

(ECF Doc. 7-1, p. 51 (emphasis added).)  But the remainder of his argument on that assignment

of error focused on whether the trial court properly considered the factors in Ohio Revised Code

2929.11 and 2929.12 in imposing his sentence.  (*Id.* at pp. 51-56.)  In the context of that state

statutory discussion, he also asserted: "the Trial Court made an unconscionable and arbitrary

determination that [Mr. Hunt's] behavior warranted a maximum consecutive prison sanction,

with an eight (8) year sentence pursuant to the RVO specification."  (*Id.* at p. 55.)  In support of

his second assignment of error on direct appeal—whether the records support a finding that

consecutive sentences were appropriate—Mr. Hunt did not reference the U.S. Constitution, but

focused his argument entirely on state law.  (*Id.* at pp. 56-60.)

Mr. Hunt argues that the constitutional claims in Grounds One and Two were fairly

presented to the state court of appeals because he: (1) asserted the claims "in terms so particular

as to call to mind a specific right protected by the Constitution"; and (2) alleged "a pattern of

facts well within the mainstream of constitutional litigation."  (ECF Doc. 12, p. 11 (quoting

*Franklin*, 811 F.2d at 326).)  In support of the first assertion, he argues that a challenge to the

findings used to impose consecutive sentences "necessarily involves a violation to his right to

due process under the Fifth and Fourteenth Amendments to the U.S. Constitution," and that "the

same analysis applies" to his challenge to his sentence on count 1 and the RVO specification.

(*Id.*)  In support of the second assertion, he argues simply that both of his sentencing challenges

on direct appeal "are well within the bounds of constitutional due process."  (*Id.*)

In support of his fair presentation argument, Mr. Hunt also cites the Sixth Circuit decision in *Austin v. Jackson*, 213 F.3d 298 (6th Cir. 2000), where the court observed it to be "undisputed that convicted defendants, … have a due process right to a fair sentencing procedure," *id.* at 300. (ECF Doc. 12, pp. 11-12.)  But *Austin* did not address the question of fair presentation.  Instead, the *Austin* court held that a state trial court did not act in an arbitrary and capricious manner—in violation of a habeas petitioner's due process rights—when it imposed a sentence that departed from state sentencing guidelines.  *Austin*, 213 F.3d at 302.  In so holding, the court found the petitioner "fail[ed] to articulate the grounds upon which the trial court's departure from the [state] sentencing guidelines violate[d] any federal due process right he possesse[d]."  *Id.* at 301.  With respect to that finding, Mr. Hunt argues that *Austin* is inapposite because Mr. Hunt "has very clearly articulated how his maximum and consecutive sentences violate his right to due process and protection from cruel and unusual punishment."  (ECF Doc. 12, pp. 11-12.)

In fact, a review of Mr. Hunt's brief in support of his direct appeal does not reflect that he clearly articulated—at that time—how his first two assignments of error violated his due process rights under the Fifth and Fourteenth Amendments or his right to protection from cruel and unusual punishment under the Eighth Amendment.  Indeed, he made no reference to the Eighth Amendment and only referenced due process with respect to his first assignment of error.  (ECF Doc. 7-1, pp. 51-60.)   Further, Mr. Hunt offers no developed argument or legal authority in his Traverse to support his conclusory arguments that his appellate brief stated his current constitutional claims "in terms so particular as to call to mind a specific right protected by the Constitution" or described "a pattern of facts well within the mainstream of constitutional litigation."  (ECF Doc. 12, p. 11 (quoting *Franklin*, 811 F.2d at 326).)

The Sixth Circuit in *Nian* found a reference to "Rights to a Fair Trial" in a pro se Ohio Supreme Court brief was sufficient to fairly present a claim that the petitioner was denied a Sixth Amendment right to a fair and impartial panel of jurors, although it presented "a close call." *Nian*, 994 F.3d at 751-53.  In that case, the Sixth Amendment claims had been clearly argued to the state trial and appeals courts, with citations to federal cases and discussion of facts necessary to the determination, but the petitioner's pro se brief to the Ohio Supreme Court argued only that he was denied his right to a fair trial "when Prejudicial Extraneous Evidence was presented to the Jury during Deliberations without the Court's approval."  *Id.* at 752.  The court nevertheless found the petitioner had fairly presented his constitutional claim because he "made it clear that the jury violated his right to a fair trial by considering prejudicial extraneous evidence," using "a statement evocative of language that [the court] articulated in prior Sixth Circuit cases" and introducing "a fact pattern well within the mainstream of constitutional litigation."  *Id.* at p. 753.

Here, there has been no similar showing that Mr. Hunt's briefing to the state appellate court—prepared with the assistance of counsel—used language evocative of the due process or Eighth Amendment rights Mr. Hunt now asserts in Grounds One and Two of the Petition, or that the brief presented a fact pattern well within the mainstream of constitutional litigation.  *See Nian*, 994 F.3d at 751.  Certainly, the brief did not present argument relying on federal or state cases employing a federal constitutional analysis.  *Id.*  Consistent with the substance of the briefing submitted by Mr. Hunt, the state appellate court addressed these assignments of error under state law only.  *See Hunt*, 2019-Ohio-1643, 2019 WL 1976021.

After careful review of Petitioner's state appellate court brief, the undersigned can find no more than a "bare assertion" of a due process violation, and no assertion of an Eighth Amendment violation.  *Nian*, 994 F.3d at 752.  "To escape procedural default, claims that the

rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments." *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004).  Mr. Hunt offered only "catchall" language regarding due process, and no language regarding his Eighth Amendment rights, in the state appellate court argument underlying Ground One.  (ECF Doc. 7-1, pp. 51-56.)  He offered no language regarding any constitutional right in the state appellate court argument underlying Ground Two.  (*Id.* at pp. 56-60.)

For the reasons set forth above, the undersigned finds Mr. Hunt failed to fairly present the constitutional claims in Grounds One and Two at every level of the state courts, and that both claims are therefore procedurally defaulted.[2]  Accordingly, the undersigned recommends that the Court **DISMISS** Grounds One and Two based on procedural default.

## 2.    Grounds One and Two are Non-Cognizable and Without Merit

Even if Grounds One and Two were not procedurally defaulted, Respondent argues they should be dismissed as non-cognizable because they are based on state law and do not rise to the level of "fundamental unfairness."  (ECF Doc. 7, pp. 22-24.)  Respondent characterizes the claims as "merely challenging Ohio's imposition of its own sentencing laws," while "cloaking [the] claims in constitutional language."  (*Id.* at 24.)  Petitioner responds that habeas review of Ground One is appropriate because his 19-year sentence for voluntary manslaughter with an RVO specification "amount[s] to cruel and unusual punishment" under the Eighth Amendment (ECF Doc. 12, p. 8), a violation of due process, and "an unreasonable determination of the facts as presented to the court" (*id.* at 9).  He argues Ground Two is cognizable because it asserts that

---

[2] Petitioner has offered no argument that his procedural default of these claims should be excused based on cause and prejudice or a fundamental miscarriage of justice (ECF Doc. 12, pp. 8-22), and any such argument is accordingly waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

his consecutive sentences violated his constitutional rights to due process and freedom from cruel and unusual punishment.  (*Id.*)

Both parties acknowledge that Petitioner's challenges under Grounds One and Two are premised on the trial court's alleged failure to properly consider the requirements under Ohio criminal law statutes regarding the following: "felony sentencing factors," "seriousness of crime and recidivism factors, and the "consecutive sentencing statute."  (Id. at 7, p. 24; ECF Doc. 12, 13-20).   Respondent contends that Petitioner's challenges are not cognizable because they would require this court to review state court sentencing decisions that were fully litigated by the court of appeals.  (ECF Doc. 7, p. 23.)  Petitioner, however, argues that the claims are proper for habeas review because he is asking the Court to decide whether his "conviction violated the Constitution, laws, or treaties of the United States."  (ECF Doc. 12, p.13.)

### i.  Grounds One and Two Are Not Cognizable

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

A challenge to a "state court's interpretation and application of its sentencing laws and guidelines" is not cognizable on federal habeas review.  *See Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003); *see also Thorne v. Lester*, 641 F. App'x. 541, 544 (6th Cir. 2016) (finding federal habeas relief was unavailable for errors of state law, which included the petitioner's

claim that the state court misapplied the state merger rule); *Carrington v. Sloan*, No. 17-3709, 2018 WL 3244026, at *2 (6th Cir. Jan. 8, 2018) (finding no reasonable jurist could disagree that sentencing claims are not cognizable and federal habeas corpus relief is unavailable for "sentencing claims . . . based on alleged violations of state law regarding sentencing"). This is because "[f]ederal habeas corpus relief does not lie for errors of state law." *Howard*, 76 F. App'x. at 53 (quoting *Estelle*, 502 U.S. at 67).

Petitioner challenges the state trial court's sentencing determinations regarding: (1) his 19-year sentence for voluntary manslaughter with an RVO specification in count 1; and (2) the imposition of consecutive sentences which resulted in an aggregate sentence of 23 years. Both matters were adjudicated on the merits under state law by the state court of appeals. *See State v. Hunt*, 2019-Ohio-1643. The court of appeals analyzed the issues as follows:

> {¶8} We combine the first and second assigned errors for analysis. The trial court's findings are affirmed.
>
> {¶9} R.C. 2953.08 sets forth the parameters of an appellate court's review of felony sentences. It includes categories of sentences that may be appealed such as consecutive sentences under R.C. 2953.08(C)(1) or a maximum sentence under R.C. 2953.08(A).
>
> {¶10} The Ohio Supreme Court prescribed the current standard for appellate review of felony sentences:
>
> > Applying the plain language of R.C. 2953.08(G)(2), we hold that HN1[ ] an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. In other words, an appellate court need not apply the test set out by the plurality in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.
>
> *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. If upon making a determination in defendant's favor, the appellate court "may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *State v. Pluhar*, 8th Dist. Cuyahoga No. 102012, 2015-Ohio-3344, ¶ 13.

23

{¶11} For a sentence to be contrary to law, the sentence must fall "outside the statutory range" for the offense or the record must reflect a failure by the trial court to "consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *State v. Lee*, 8th Dist. Cuyahoga No. 104190, 2016-Ohio-8317, ¶ 9, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

{¶12} There is no mandatory duty for a trial court to explain its analysis of the statutory sentences pursuant to our holding in *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 27. A trial court is only required to indicate that the statutory factors have been considered. *Id.*, citing *State v. Wright*, 8th Dist. Cuyahoga No. 100283, 2014-Ohio-3321, ¶ 10.

{¶13} There is a presumption in Ohio "that prison sentences should be served concurrently unless the trial court makes the findings outlined in R.C. 2929.14(C)(4) to warrant consecutive service of the prison terms." *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 67 (8th Dist.), citing *State v. Primm*, 8th Dist. Cuyahoga No. 103548, 2016-Ohio-5237, ¶ 64, citing *State v. Cox*, 8th Dist. Cuyahoga No. 102629, 2016-Ohio-20, ¶ 3; R.C. 2929.41(A).

{¶14} After a presentencing investigation and psychiatric examination regarding disposition of the case, Hunt was sentenced as follows:

> Count 1: 11 years plus 8 years as a repeat violent offender; total of 19 years;
> Count 3: 36 months;
> Count 4: 12 months.
> Counts 1, 3, and 4 to run consecutive to each other.
> Counts 5 and 6: 90 days in jail on each count, concurrent to each other and concurrent to Counts 1, 3, and 4.

Journal entry No. 103349364 (Apr. 12, 2018).

{¶15} Hunt contends that the trial court failed to address the felony sentencing factors in R.C. 2929.11 and the seriousness of crime and recidivism factors of R.C. 2929.12.

> R.C. 2929.11(A), governing the purposes and principles of felony sentencing, provides that a sentence imposed for a felony shall be reasonably calculated to achieve two overriding purposes of felony sentencing: (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Furthermore, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

24

R.C. 2929.12 delineates the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

*State v. Martin*, 8th Dist. Cuyahoga No. 104354, 2017-Ohio-99, ¶ 9-10.

{¶16} Hunt also argues that proper consideration of the requisite factors should have resulted in a lesser sentence and challenges imposition of the maximum sentence for the voluntary manslaughter that allowed imposition of the RVO specification.

{¶17} The consecutive sentencing statute, R.C. 2929.14(C)(4), provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶18} At the sentencing hearing, the trial court heard statements by the parents and grandparents of Bryant. Mitigating factors proffered on Hunt's behalf included the ongoing relationship between Hunt and Bryant, the macing of Hunt by Bryant during an attempted robbery and that Hunt was choking Bryant and she fell and hit her head.

{¶19} Hunt apologized to the family and thanked the investigators that afforded him the "opportunity to come clean with them." (Tr. 78.) Hunt admitted that he made a "terrible mistake" and took "full responsibility for not being able to return her home. And I just want to say I'm sorry." (Tr. 78.)

{¶20} Pertinent excerpts of the trial court's determination follow:

> Voluntary manslaughter, I do think the appropriate sentence is 11 years in prison. And as I mentioned that is mandatory time.
>
> Tampering with evidence is a felony of the 3rd degree and related to that is offenses against human corpse. These are separate offenses, and the minimum is nine months, the maximum is 36 months for tampering with evidence. And I'm going to impose the maximum of 36 months for tampering with evidence. That's Count 3. The offenses against the human corpse is a felony of the 5th degree, which is the least serious felony that we have and is somewhat surprising to me that it is a felony of the 5th degree but that is what the law states. And the minimum of that is six months in prison up to 12 months in prison and I'm going to impose the maximum of 12 months. I'm not going to consider the alternative of probation in either Count 3 or Count 4 given the circumstances.
>
> Obstructing official business are minor misdemeanors, or misdemeanors of the 2nd degree I should say, and I'm going to impose the maximum of 90 days in each of those counts and run those concurrent to each other.
>
> I do think the maximum amount is for the time periods I've mentioned for the counts I've mentioned are appropriate. I do think it's also appropriate in this situation to run these counts consecutive to each other, which means that he serves a sentence on one, he serves a sentence on the next, he serves the sentence on the next. And I think that's appropriate because of the circumstances involved in this case, and that's based on Mr. Hunt's criminal record, specifically the prior attempted murder and there is a statutory finding that I must make if I'm going to do consecutive sentences.
>
> And I do think that consecutive sentences are necessary to protect the public from future harm or to punish the offender, Mr. Hunt, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that he poses to the public, and if the Court also finds at least one of the following, and based on his criminal conduct it demonstrates that consecutive sentences are necessary to protect the public from future harm by the offender.
>
> I think under these circumstances it is appropriate given the totality of what's occurred in this situation. (Tr. 81-84.) [underline emphasis added]

{¶21} The sentences are within the statutory range. "[A] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors." *State v. Martin*, 2d Dist. Clark No. 2014-CA-69, 2015-Ohio-697, ¶ 8, citing *State v. Walker*, 2d Dist. Montgomery No. 25741, 2014-Ohio-1287, ¶ 17-19; *State v. Hayes*, 2d Dist. Clark No. 2014-CA-27, 2014-Ohio-5362, ¶ 15.

{¶22} The trial court enumerated the requisite findings to impose consecutive sentences under R.C. 2929.14(C). It is "clear from the record that the trial court actually made the findings required by statute." *State v. Marton*, 8th Dist. Cuyahoga No. 99253, 2013-Ohio-3430, ¶ 13, citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 14, 17 (8th Dist.). "[T]alismanic words" are not required. *Id*.

{¶23} The sentencing judgment entry also reflects that:

> The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11. * * * The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

Journal entry No. 103349364 (Apr. 12, 2018).

{¶24} Hunt's RVO charge is pursuant to R.C. 2941.149(A). As required by the statute, the specification is included in the indictment.

> "Repeat violent offender" means a person about whom both of the following apply:
>
> (1) The person is being sentenced for committing or for complicity in committing any of the following:
>
> (a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;
>
> (b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section.

R.C. 2929.01(CC).

{¶25} Hunt's 1999 convictions included attempted murder, felonious assault, and aggravated burglary. The trial court is the sole arbiter of whether an accused is a repeat violent offender. R.C. 2941.149(B).

{¶26} R.C. 2929.14(B)(2)(a) allows for imposition of the RVO specification where the longest prison term is imposed on the underlying conviction. [ ] Pursuant to R.C. 2929.14(B)(2)(a), in addition to the longest prison term authorized for the offense, the sentencing court may impose an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years for the repeat violent offender specification, if all of the following criteria are met:

"(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole.

(iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.

(iv) The court finds that the prison terms imposed * * * are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(v) The court finds that the prison terms imposed * * * are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."

*State v. Richmond*, 8th Dist. Cuyahoga No. 101215, 2014-Ohio-4842, ¶ 14, quoting *State v. Richmond*, 8th Dist. Cuyahoga No. 98915, 2013-Ohio-2887, ¶ 20.

{¶27} R.C. 2929.14(B)(2)(e) dictates the trial court "shall state its findings explaining the imposed sentence" "[w]hen imposing a sentence pursuant to division (B)(2)(a) or (b) of this section."

{¶28} Hunt pleaded guilty to the RVO specification meeting the element of R.C. 2929.1 (B)(2)(a)(I).

> [A]s part of the continuing course of conduct for voluntary manslaughter, I do think it's appropriate to impose a sentence involving the repeat violent offender.
> (Tr. 86.)

{¶29} Hunt pleaded guilty to voluntary manslaughter, a first-degree felony that is an offense of violence and he was not sentenced to life without parole, supporting R.C. 2929.14(B)(2)(a)(ii). Voluntary manslaughter "is nonetheless the most serious felony that we have." (Tr. 80.)

{¶30} Hunt received the maximum sentence that was not life without parole, meeting R.C. 2929.14(B)(2)(a)(iii).

> And the [voluntary manslaughter] felony of the [first] degree is three years at a minimum and 11 years at a maximum. * * * Voluntary manslaughter, I do think the appropriate sentence is 11 years in prison.
> (Tr. 81.)

{¶31} The trial court also considered recidivism pursuant to R.C. 2929.14(B)(2)(a)(iv) and seriousness of the offense under R.C. 2929.14(B)(2)(a)(v). First, when considering the imposition of consecutive sentences under R.C. 2929.12 factors, the court pointed out: (I) Hunt's prior attempted murder conviction; (ii) the necessity of protecting the public and punishing the offender; and (iii) that consecutive sentences were not disproportionate to the serious of the crime. (Tr. 83-84.)

{¶32} The trial court also noted:

> And given Mr. Hunt's prior circumstances and prior serious felonies, and one not so long ago involving attempted murder, he finds himself before me, not only pleading guilty to that charge, but also with a specification called repeat violent offender and notice of prior conviction. * * *
>
> The issue for me is what do I do with regard to the repeat violent offender. Here I think it is important to note what this stands for. The words tell you clearly what it means, but in this situation we're dealing with conduct of both parties and clearly the much more serious conduct in causing the death of Miss Bryant by Mr. Hunt. * * *

29

The nature of Mr. Hunt's conduct after the event leads me to believe that the repeat violent offender specification should be included as a continuing course of conduct regarding the voluntary manslaughter and which has caused, and I suspect will cause for a considerable period of time. * * *

[A]s part of the continuing course of conduct for voluntary manslaughter, I do think it's appropriate to impose a sentence involving the repeat violent offender. * * *

I think under these circumstances [the RVO] is appropriate given the totality of what's occurred in this situation.
(Tr. 80, 85-87.)

{¶33} We find that the trial court complied with the statute. There are no magic words the trial court is required to recite when making RVO findings under R.C. 2929.14(B)(2)(a). *State v. Watts*, 8th Dist. Cuyahoga No. 104269, 2017-Ohio-532, ¶ 11. As long as the reviewing court can discern from the record that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, the sentence on the RVO specification should be upheld. *Id*. at ¶ 12. *State v. Buchanan*, 8th Dist. Cuyahoga No. 105706, 2018-Ohio-1086, ¶ 72.

{¶34} The first and second assignments of error are overruled.

*Hunt*, 2019-Ohio-1643, at ¶¶ 8-34.

To the extent that Petitioner is seeking federal habeas relief based on an assertion that the trial court failed to properly apply state sentencing laws, he has failed to state a claim upon which federal habeas relief may be granted.  *See Howard*, 76 F. App'x at 53; *Thomas*, 641. F. App'x at 544.  Accordingly, the undersigned recommends that the Court **DISMISS** Grounds One and Two as not cognizable to the extent those claims assert errors of state law.

### ii.    Grounds One and Two Are Without Merit

Even where a state court decision has applied and interpreted state law, Sixth Circuit courts also consider whether the state court's finding had the effect of rendering the entire process "fundamentally unfair" in violation of due process rights.  *See, e.g., Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007); *Maldonado v. Wilson*, 416 F.3d 470, 477 (6th Cir. 2005).  But "the Supreme Court has defined 'very narrowly' the category of infractions that violates

'fundamental fairness,'" to include only those acts that "'violate[] those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.'" *Bey*, 500 F.3d at 522 (citing *Dowling v. United States*, 493 U.S. 342, 352-353 (1990)).

To the extent Petitioner contends the state court's application of Ohio sentencing laws violated fundamental fairness or resulted in a "grossly disproportionate" sentence in violation of Petitioner's due process and Eighth Amendment rights, that argument must fail on the merits because Petitioner has failed to show that the trial court's actions violated fundamental conceptions of justice, *see Dowling*, 493 U.S at 522-23, or that the sentences as imposed constitute cruel and unusual punishment, *see Harmelin v. Michigan*, 501 U.S. 957 (1991).

Here, the state court of appeals discussed the trial court's sentencing determinations at length before concluding that the trial court had properly considered all statutory factors and sentenced Petitioner within the relevant guidelines. *See Hunt*, 2019-Ohio-1643, at ¶¶ 8-34. Specifically, the court examined the trial court's consideration of the three sentencing statutes cited by Petitioner as the grounds for the alleged fundamental unfairness of the sentencing determination. (*See* ECF Doc. 12, p. 13.)

Mr. Hunt offers several arguments on the merits of the claims in Grounds One and Two. First, he alleges that the trial court's sentencing hearing transcript "did not reveal any consideration" of the "felony sentencing factors" in Ohio Revised Code Section 2929.11. (*Id.* at 13-14.) Second, as to the "seriousness of crime and recidivism factors," he argues "[a]t most," "the trial court gave consideration [of Hunt's] prior felony record, but [not] any of the other numerous factors" in Ohio Revised Code Section 2929.12. (*Id.* at 13-22.) In support, he highlights facts that may support a finding that a lesser sentence was warranted, with concurrent

31

rather than consecutive sentences. (*Id.* at 13-20.) Third, he argues the trial court's decision to impose consecutive sentences was premised on "an unreasonable determination of the fact," and violated his Fifth, Eighth, and Fourteenth Amendment rights. (ECF Doc. 12, p. 22.)

Turning to the "felony sentencing factors," Section 2929.11 requires a court that is imposing a sentence for a felony conviction to consider public protection, punishment of the offender, and the seriousness of the crime. OHIO REV. CODE § 2929.11. Section 2929.12 requires a court to look at seriousness and recidivism when complying with 2929.11, and "provides a non-exhaustive list of factors a trial court must consider" in the sentencing determination. *State v. Martin*, 8th Dist. Cuyahoga No. 104354, 2017-Ohio-99, ¶ 9-10; citing OHIO REV. CODE § 2929.12. The court of appeals was duly satisfied that the trial court demonstrated in the sentencing hearing that its sentencing determination was made in consideration of the above-stated factors. *Hunt*, 2019-Ohio-1643, at ¶¶ 8-34.

As to the imposition of consecutive sentences, the trial court was bound by Ohio Revised Code 2929.14(C): "In Ohio, there is a presumption that prison sentences should be served concurrently unless the trial court makes the findings outlining in R.C. 2929.14(C)(4) to warrant consecutive service of the prison terms." *State v. Vinson*, 73 N.E.3d 1025, 1048 (Ohio Ct. App. 2016). In order to impose consecutive sentences, an Ohio court must make three statutory findings. *See e.g., State v. Gessel*, 2020-Ohio-403, ¶8, 2020 WL 603608, at *2 (Ohio Ct. App. Feb. 7, 2020). The required findings are:

> . . . (1) that consecutive sentences are necessary to protect the public or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) that R.C. 2929.14(C)(4)(a), (b), or (c) is applicable.

(*Id.*) The findings need not be recited verbatim. (*Id.*)

In the instant case, the trial court recited the required Section 2929.14(C) factors in its sentencing judgment entry, as noted by the court of appeals:

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

*Hunt*, 2019-Ohio-1643, at ¶ 23 (citing Journal entry No. 103349364 (Apr. 12, 2018)).

Petitioner has not identified any evidence to support a conclusion that the trial court did not consider the required factors in Sections 2929.11, 2929.12 or 2929.14, or otherwise deviated from Ohio sentencing law. Additionally, Petitioner has not identified any U.S. Supreme Court precedent to support his theory that the trial court's treatment of the statutory factors was fundamentally unfair. Thus, the undersigned finds that Petitioner has not made the requisite showing of fundamental unfairness to support relief on the merits, and has not adequately supported his argument that his sentence is grossly disproportionate to the crimes at hand.

For the reasons set forth above, the undersigned recommends that the Court **DENY** Grounds One and Two on the merits.

## C.    Ground Three

In Ground Three, Petitioner asserts that he "received ineffective assistance of trial counsel in violation of the Sixth Amendment of the U.S. Constitution, where he received no substantive benefit by pleading guilty rather than going to trial, and where counsel failed to object to the 8 year sentence imposed for a repeat violent offender specification to which Hunt did not plead guilty." (ECF Doc. 1, p. 9.) Respondent argues that Ground Three is procedurally defaulted because it was not fairly presented in state court, and such default cannot be excused. (ECF Doc. 7, pp. 36-38.) In the alternative, Respondent argues Ground Three must be denied on

the merits. (*Id.* at 37-38.) Petitioner responds that the claims are not procedurally defaulted and should be granted on the merits. (ECF Doc. pp. 23-24.) For the reasons set forth below, the undersigned concludes that one of the claims articulated in Ground Three was fairly presented to the state courts, but that Ground Three should be **DENIED** on the merits.

### 1. One Claim in Ground Three Was Fairly Presented

Mr. Hunt articulates two separate claims for ineffective assistance of trial counsel in Ground Three: (1) he "received no substantive benefit by pleading guilty rather than going to trial" and (2) counsel failed to object to the 8-year sentence for the RVO specification "to which Hunt did not plead guilty." (ECF Doc. 1, p. 9.) Respondent argues that both claims were procedurally defaulted because they differ from the ineffective assistance of counsel claims Mr. Hunt argued in his direct appeal to the state court of appeals. (ECF Doc. 7, pp. 36-37.) Specifically, Respondent says Mr. Hunt argued to the state court that his trial counsel was ineffective because communications between counsel and Mr. Hunt fell below a reasonable standard, including communications regarding the RVO and the plea bargain. (*Id.* at p. 36.) In contrast, Respondent argues Ground Three asserts counsel was ineffective because trial counsel failed to negotiate a more advantageous plea or to object to the RVO specification. (*Id.*)

Petitioner argues that he fairly presented both of the ineffective assistance of trial counsel claims in Ground Three to the state courts. (ECF Doc. 12, pp. 23-24.) As to his claim that he received no substantive benefit by pleading guilty rather than going to trial, Petitioner points to his argument to the state court of appeals that he "did not receive a true plea bargain, rather was effectively pleading to the indictment." (*Id.* at p. 23.) As to his claim that trial counsel failed to object to the RVO specification, Petitioner points out that he argued to the state court of appeals that trial counsel failed to discuss the RVO with him. (*Id.*) He also argues generally that the

34

ineffective assistance claims in Ground Three are "substantially similar to, and related to, those that were raised in the direct appeal." (*Id.* at p. 24.)

As discussed in Section III.B.1., *supra*, a petitioner must fairly present both the facts and legal theories underpinning his federal habeas claims to the state courts to avoid procedural default. *See McMeans*, 228 F.3d at 681.  To satisfy this requirement, "the petitioner's federal habeas petition must be based on the same theory presented in state court and cannot be based on a wholly separate or distinct theory." *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)).

In *Wong v. Money*, the petitioner sought federal habeas relief for ineffective assistance of trial counsel based on (1) counsel's alleged failure to pursue an insanity defense at trial and (2) counsel's failure to seek additional expert testimony to enhance existing expert opinions regarding the insanity defense.  142 F.3d at 318.  Petitioner had argued in state court that her counsel were ineffective due to their failure to present existing expert testimony regarding the insanity defense or to request a jury instruction regarding the insanity defense.  *Id.* at 317-21. Considering those earlier filings, the Sixth Circuit addressed the merits of the first argument— that counsel was ineffective due to their failure to pursue an insanity defense at trial.  *Id.* However, the court found the petitioner had procedurally defaulted the second claim for ineffective assistance—failure to seek new expert testimony regarding the insanity defense— because that claim "rest[ed] on a theory which [wa]s separate and distinct from the one previously considered and rejected by the state court." *Id.* at 321-22.

In *Carter v. Mitchell*, the Sixth Circuit found two ineffective assistance of counsel claims were fairly presented to the state courts, overturning a finding of procedural default.  693 F.3 at 565-69.  There, the petitioner had argued to the state courts that counsel provided ineffective

assistance when they (1) elicited unfavorable testimony from a mitigation expert and (2) failed to have the petitioner's mother testify on his behalf at the mitigation phase.  *Id.* at 569.  The two relevant grounds for habeas relief asserted (1) ineffective assistance at the mitigation phase, noting deficiencies in the mitigation expert's testimony and the failure to have the petitioner's mother testify and (2) ineffective assistance leading to the exclusion of evidence at the mitigation phase.  *Id.*  The court found both habeas grounds "were raised through a complete round of Ohio's appellate process," and were therefore "not procedurally defaulted."  *Id.*

Applying this standard to the ineffective assistance claims identified in Ground Three of the Petition, the undersigned finds one of the claims was fairly presented to the state courts—that petitioner received no substantive benefit by pleading guilty rather than going to trial—but the second claim was not fairly presented and was procedurally defaulted.

In his direct appeal, Petitioner argued that he received ineffective assistance of counsel for several reasons.  (ECF Doc. 7-1, pp. 60-62.)  First, he said his communications with counsel fell below a reasonable standard because he and trial counsel "never discussed what an RVO was and how an RVO could, or would be applied in the instant matter."  (*Id.* at p. 61.)  Second, he said his communications with counsel fell below a reasonable standard because he "effectively did not receive a true plea bargain, rather was effectively pleading to the indictment" when the only count "nolled" under the plea agreement would already have merged with Count One for sentencing.  (*Id.*)  He also argued that he "had absolutely no idea what he was pleading to," and would not have pled guilty if he had been effectively counseled regarding the full plea.[3]  (*Id.*)

In his memorandum in support of jurisdiction to the Supreme Court of Ohio, filed pro se, Petitioner quoted legal authority stating: "An attorney, who advises his client to plead guilty as

---

[3] Petitioner's third argument—that counsel did not refer him for a competency or sanity report until after the plea was entered—is not addressed because it is not relevant to the present discussion. (ECF Doc. 7-1, p. 62.)

charged when the client receives no benefit at all in exchange therefore, could possibly be deemed to have failed in his duty to competently represent his client." (ECF Doc. 7-1, p. 148 (quoting *State v. Underwood*, No. 98CA11, 1999 WL 301637, at *3 (Ohio Ct. App. May 7, 1999), *cause dismissed*, 86 Ohio St. 3d 1483, 716 N.E.2d 215 (1999)). He went on to argue that the sentence he received for pleading guilty "nearly equaled the maximum sentence he could have received by taking his case to trial and losing," and his counsel's advice to plead guilty "was clearly deficient" and violated his right to effective assistance of counsel. (*Id.* at 148-49.)

In Ground Three—also filed pro se—Petitioner asserted that he received ineffective assistance of counsel because he "received no substantive benefit of pleading guilty rather than going to trial." (ECF Doc. 1, p. 9.) In support, he noted that Counts 1 and 2 "would have been merged under any conviction" and that his 23-year sentence was only two years less than the maximum term he could have received if he lost at trial. (*Id.*) The undersigned finds this claim was fairly presented to the state courts. Petitioner argued to the state court of appeals that he "effectively did not receive a true plea bargain, rather was effectively pleading to the indictment." (ECF Doc. 7-1, p. 61.) He argued to the state supreme court that he received no benefit in exchange for his guilty plea, receiving a sentence that nearly equaled the maximum sentence if he lost at trial. (*Id.* at p. 148.) This was sufficient to fairly present his argument in Ground Three that he received no substantive benefit of pleading guilty rather than going to trial. *See Carter*, 693 F.3 at 569.

However, the fair presentation of this argument did not include Mr. Hunt's new assertion, in the supporting facts of the Petition, that trial counsel failed to negotiate a deal in which he could plead guilty to a letter charge. (ECF Doc. 1, p. 9.) The claims presented to the state courts focused instead on trial counsel's advice to Mr. Hunt regarding his decision to enter his guilty

plea.  (ECF Doc. 7-1, pp. 60-62, 148-49.)  Any claim that trial counsel failed to negotiate a better plea deal "rests on a theory which is separate and distinct from the one previously considered and rejected by the state court," *Wong,* 142 F.3d at 321-22, and was procedurally defaulted.

Similarly, the claim in Ground Three that counsel failed to object to the 8-year sentence for the RVO specification "to which Hunt did not plead guilty" (ECF Doc. 1, p. 9) was not fairly presented to the state courts.  Petitioner's argument to the state court that he and counsel "never discussed what an RVO was and how an RVO could, or would be applied in the instant matter" (ECF Doc. 7-1, p. 61) did not give the state courts an opportunity to address his present argument that his counsel should have objected to the sentence for the RVO specification.  Instead, this claim also "rests on a theory which is separate and distinct from the one previously considered and rejected by the state court." *Wong,* 142 F.3d at 321-22.  The undersigned therefore finds this claim was not fairly presented to the state courts and is therefore procedurally defaulted.

For the reasons set forth above, the undersigned concludes that Petitioner fairly presented only one of the claims for ineffective assistance of counsel set forth in Ground Three. [4]

### 2.   Ground Three is Without Merit

Even if Ground Three is not procedurally defaulted, Respondent argues the ineffective assistance of counsel claims lack merit because the record shows Petitioner understood his plea agreement, including the RVO specification, and that there is no evidence the prosecutor would have agreed to a plea to lesser offenses.  (ECF Doc. 7, pp. 37-38.)  In support of the merits, Petitioner argues that his trial counsel should have advised him of the prospects of his case at trial since he "received hardly any benefit by accepting responsibility and waiving his right to a trial."  (ECF Doc. 12, pp. 25-26.)  He also argues, with respect to the arguments the undersigned

---

[4] Petitioner has offered no argument that any procedural default of these claims should be excused (ECF Doc. 12, pp. 23-26), and any such argument is accordingly waived.  *See McPherson*, 125 F.3d at 995-96.

has found procedurally defaulted, that counsel should have objected to his sentence for the RVO specification and "should have advocated for a better plea deal." (*Id.* at pp. 24-26.)

### i.    Legal Standard for Ineffective Assistance Relating to Plea Bargain

"[T]he Sixth Amendment right to the effective assistance of counsel applies at all 'critical' stages of the criminal proceedings, including the plea-bargaining stage." *Carson v. United States*, --F.4th--, 2023 WL 8615790, at *4 (6th Cir. Dec. 13, 2023) (citing *Missouri v. Frye*, 566 U.S. 134, 140-44 (2012)).  "[A] voluntary and unconditional guilty plea [generally] 'bars any subsequent non-jurisdictional attack on the conviction.'" *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (quoting *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012)).  The U.S. Supreme Court explained the impact of a guilty plea on a petitioner's ability to later challenge his conviction or sentence in federal collateral proceedings:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett*, 411 U.S. at 267.  "Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

In *Strickland v. Washington*, the Supreme Court established two requirements to show that an attorney was constitutionally ineffective.  466 U.S. 668, 687 (1984).  First, a petitioner must show "that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Specifically, he must show that the representation fell below an objective standard of reasonableness based on all of the

circumstances of the case. *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential" in such cases because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* 689.

Under the second *Strickland* requirement, a petitioner must also show "that the deficient performance prejudiced the defense." *Id.* at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* To meet this requirement, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," a reasonable probability being "sufficient to undermine confidence in the outcome." *Id.* at 694.

Where "a defendant is represented by counsel during the plea process and entered his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *McMann v. Richardson*, 397 U.S. 759, 771 (1970). A petitioner may only "attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" to plead guilty was "outside the range of competence demanded of attorneys in criminal cases." (*Id.* at 267-68.) If a petitioner shows that a guilty plea was not counseled and voluntary, he must then prove the second element under *Strickland*, that there is a reasonable probability that the outcome would have been different but for the deficient actions of counsel. 466 U.S. at 671.

Further, where a state court of appeals reached the merits of an ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011). The U.S. Supreme Court

has emphasized the double layer of deference that federal courts must give state courts in

reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. App'x. at 828 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).

### ii.    State Court Adjudication of Ineffective Assistance of Counsel

The Ohio Court of Appeals analyzed Petitioner's assignments of error regarding

ineffective assistance of counsel as follows:

> {¶35} Hunt argues that defense counsel's performance was deficient because the communication between Hunt and counsel fell below a reasonable standard. As a result, Hunt maintains that: (1) he did not understand the impact of the RVO specification; (2) he did not receive a true plea bargain because the second count would have merged into the first count so there was no true benefit to him; and (3) Hunt was not referred for a competency evaluation until after he entered the guilty plea in spite of evidence that Hunt was confused about the plea proceedings.

> {¶36} A guilty plea must be made voluntarily, knowingly and intelligently. State v. Bush, 8th Dist. Cuyahoga No. 106392, 2018-Ohio-4213, ¶ 4, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. "A guilty plea that lacks any of these elements is invalid." Id. An appellate court reviewed the entire record to determine whether the plea was validly entered. Id., citing *State v. Armstrong*, 8th Dist. Cuyahoga No. 101961, 2015-Ohio-3343, ¶ 18.

> {¶37} Hunt argues ineffectiveness due to a breakdown in communications with defense counsel:

>> To prove ineffective assistance of counsel, a defendant is required to show (1) counsel's representation was both deficient, falling "below an objective standard of reasonableness," and (2) a reasonable probability that absent

this deficient performance the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 671, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of a guilty plea, a defendant must show both a deficient performance and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty * * *." State v. Xie, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

*Id.* at ¶ 17.

{¶38} It appears that Hunt's claim of ineffective assistance arises due to dissatisfaction of the sentence imposed. No breakdown in communication was demonstrated that served to jeopardize Hunt's Sixth Amendment right to the effective assistance of counsel. *State v. Vaughn*, 8th Dist. Cuyahoga No. 87245, 2006-Ohio-6577, ¶ 19, citing State v. Coleman, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988); *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765.

{¶39} The trial court in this case complied with Crim.R. 11(C)(2), which requires a court to recite each of the constitutional rights the defendant is waiving and to specifically inquire whether the defendant is (1) "'making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty involved,'" (2) that the defendant "'understands the effect of his plea of guilty,'" and (3) that the defendant understands that the court "'may proceed to judgment and sentence.'" *State v. Elliott*, 8th Dist. Cuyahoga No. 102226, 2015-Ohio-3766, ¶ 12, quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621. Hunt does not claim error on this issue.

{¶40} At the March 5, 2018 final pretrial, the trial court addressed a motion filed by Hunt to strike the RVO as unconstitutional. Hunt was advised that the motion must be filed by defense counsel. Defense counsel said that he reviewed the motion and believed it had no foundation in law in the case. HN14[ ] When a criminal defendant is represented by counsel and there is no indication that defense counsel joins in the defendant's pro se motion or otherwise indicates a need for the relief sought by the defendant pro se, the trial court cannot properly consider the defendant's pro se motion. *State v. Thomas*, 8th Dist. Cuyahoga No. 103759, 2016-Ohio-4961, ¶ 213, citing *State v. Wyley*, 8th Dist. Cuyahoga No. 102899, 2016-Ohio-1118, ¶ 9.

{¶41} The parties engaged in an in-depth discussion of the grounds for the RVO, that the RVO could only be applied if the trial court imposed a maximum sentence on the underlying manslaughter count, and that imposition of the RVO as well as the term of the RVO was within the trial court's discretion.

{¶42} The trial court then explained the RVO specification:

Now, Mr. Hunt, did you understand what I said? So let's assume that you plead guilty or you go to trial, either before me as the judge without a jury, or all the jury is in, all the evidence is presented, and they come back with

a guilty verdict. Then we'll get some papers together about your background and history. We'll get all that information. We'll hold a sentencing hearing, usually 30 days later, and I listen to all of the information about sentencing both from your side and the prosecutor's side, and then it's time for me to decide.

As it stands now, with your situation presently in this indictment, if I were to impose the maximum amount, eleven years, and only if I apply or decided that eleven years was appropriate, at that time I can then decide to consider the RVO statute, the repeat violent offender. It's not mandatory that I impose it, but if I choose to impose it, I can do so by adding an additional time period up to ten years. So the eleven years can be twenty-one, it can be twelve, it can be thirteen. It can  be all the way up to twenty-one.

(Tr. 19-20.)

{¶43} The court continued,

If I decide to impose a sentence less than eleven but within the range of three to eleven, let's just pick eight as a number, then I cannot apply the RVO statute. So I have to get to eleven first. That's the first decision.

Second is do I apply the RVO or not. If the answer is yes because of the circumstances of this situation, then how many additional years will it be in addition to eleven? Will it be one or all the way up to ten, which would be twenty-one.

Now, that's different for others who have repeat violent offender specifications on other cases or other indictments before them, and if you were coming before me with three RVO specifications in prior cases, then we're talking about a different situation.

Does that help you?

Hunt: Yes, sir.

(Tr. 20.) The state and defense counsel agreed on the record to the accuracy of the trial court's recitation.

{¶44} In spite of the events of March 5, 2018, at the March 12, 2018 hearing, Hunt shared his understanding that he was only pleading to the three-to eleven-year voluntary manslaughter charge. "I'm not copping to an RVO. I was not aware of that." (Tr. 28.) "Your Honor, I'm not willing to cop to a repeat violent offender, your Honor. I'm not willing to do that." Id. "[T]hat's why I put that motion to strike RVO in this case as unconstitutional." Id.

{¶45} The parties revisited the impact of the RVO for the record.

Court: So the notice of prior conviction [specification] just makes [incarceration for the first degree manslaughter count] mandatory. It doesn't add anything other than that. Do you understand that?

Hunt: Yes, your Honor.

Court: The repeat violent offender that we talked about only applies in your situation to the following:

One, I must impose the maximum amount of 11 years. If I order something less than 11 years, then the repeat violent offender specification has no application whatsoever.

So, if I sentence you to ten years or 13 less, it's not in play. Do you understand that?

Hunt: Yes, sir.

Court: It only comes into play when I order 11 years which is the maximum amount for a felony in the first degree.

If I order 11, then I have the option of adding one to ten years in yearly increments to that if I so choose. And I would make that decision based on all the information made available to me at the time of sentencing.

So, it's basically a three to 11 standard felony in the first degree sentence with two changes, mandatory prison in place of probable prison, and only if I give you 11 years will then consider adding one, two, three all the way up 3 to ten which would be an additional time period to only the 11.

Do you understand that?

Hunt: Yes, your Honor.

Court: Isn't that what you understood when we left here before?

Hunt: No, your Honor. Sometimes it's hard for me to catch up with what you say because I'm kind of like a little slow learner, so it takes me a little while. But now that you — the way that you broke it down to me, your Honor, I fully understand.

Court: All right. Now, is that what you believed when you heard it here this morning? When the prosecutor said with regard to Count 1 there's a notice of prior conviction and repeat violent offender specification, you immediately said, no, I'm not going to plead to that.

Did you understand that what that meant is exactly what I said?

Hunt: No, your Honor. That's not what I understood.

Court: But did you kind of go back to what you thought it was before?

Hunt: Yes, your Honor.

Court: Now, do you want to talk about this to your attorney at this point?

Hunt: No, your Honor. Now, your Honor, the way that you broke it down to me, yes, I would like to enter a plea, your Honor.

44

Court: Okay. Now, there are no promises one way or the other about whether I impose the 11 or not impose the 11. Do you understand that?

Hunt: Yes, your Honor. I fully do.

Court: So I may; I may not, but it's going to depend upon all the facts and circumstances that I'll hear at sentencing. Do you understand?

Hunt: Yes, your Honor.

Court: And even if I did impose the 11, that doesn't mean I will or will not impose the additional one to ten. That's a possibility. You understand that? In other words, I'll listen to all the evidence and then I'll make up my mind whether or not if I order 11, additional prison time is warranted. Do you understand that?

Hunt: Nodding in the affirmative.

Court: Let me say it again. If I hear all the information at sentencing from you, your attorney, from the State, from the victim's representatives or family members, and I decide that 11 years is appropriate, and then I hear additional information or the same information and I decide some additional time is needed or warranted under your situation and I impose anywhere from one to ten, I'll make all those decisions at sentencing. I haven't made any of these decisions at this point. Do you understand that risk?

Hunt: Yes, your Honor.

Court: And nothing I've said here today promises you one way or the other. Do you understand that?

Hunt: Yes, your Honor.

Court: And are you willing to go forward on that basis?

Hunt: Yes, your Honor. I am.

(Tr. 31-35.) Counsel for both parties' counsel expressed a belief that Hunt understood the trial court's explanation. During the colloquy, Hunt said that he was "100 percent" satisfied with the representation that he received from defense counsel. (Tr. 37.) There is nothing in the record indicating a breakdown in communication between Hunt and defense counsel.

[. . . .][5]

{¶49}  The record reflects two in-depth explanations regarding the RVO specification as well as the terms of the proposed plea. Hunt stated that any initial confusion was clarified by the trial court's subsequent explanation. Hunt initially entered a "no contest" plea to the counts. The state indicated that Count 2 would be nolled only for a guilty plea. The trial court next explained to Hunt that Count 2

---

[5] Discussion regarding Petitioner's mental competence omitted because it is not raised in the instant habeas claim.

would merge with the voluntary manslaughter count for sentencing if he desired to maintain a no contest plea. Hunt elected to enter guilty pleas.

[. . . .]

{¶53} Hunt has not established that "there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offense at issue and would have insisted on going to trial." Id. at ¶ 21, citing *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *Xie*, 62 Ohio St.3d at 524, and *Hill*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203; *State v. Wright*, 8th Dist. Cuyahoga No. 98345, 2013-Ohio-936, ¶ 12.

{¶54} The third assigned error is without merit.

*Hunt*, 2019-Ohio-1643, at ¶¶35-54.

### iii.    Ground Three is Without Merit

Under *Strickland*, counsel's performance must fall below an objective standard of reasonableness based on all the circumstances of the case to demonstrate ineffective assistance under a habeas review.  466 U.S. at 688.  Because Petitioner seeks review of a conviction based on a guilty plea, the relevant question is whether the underlying plea was counseled and voluntary.  *Broce*, 488 U.S. at 569.  Further, because of the double layer of deference federal courts must give to state courts in reviewing *Strickland* claims under AEDPA, the ultimate "question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Perkins*, 411 Fed. Appx. at 828.

Here, the court of appeals provided a thorough analysis of the extensive discussion of the terms of the plea agreement during the hearings leading up to and including Petitioner's plea. *Hunt*, 2019-Ohio-1643 at ¶¶35-54.  During these discussions, the presiding judge explained, solicited questions regarding, and confirmed Mr. Hunt's understanding of the implications of pleading to the RVO specification and the possibility for consecutive sentences.  *Id.*  The court aptly noted that the record lacked any indication of a breakdown of communication between Petitioner and his attorney.  *Id.* at ¶45.  Thus, the record supports a finding that Petitioner's plea

46

was entered based on advice that was "within the range of competence demanded of attorneys in criminal cases," *McMann*, 397 U.S. at 771 (1970), and was therefore counseled and voluntary.

Petitioner now asserts that he received no benefit from taking the plea deal given the length of his sentence. (ECF Doc. 25-26.) But he has offered no evidence that the outcome in his case would have been different but for counsel's alleged deficiencies, *Strickland*, 466 U.S. at 671, has not shown that the court of appeals' determination was contrary to or an unreasonable application of *Strickland*, and has not shown that the court of appeals' decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Perkins*, 411 Fed. Appx. at 828.

Considering the double layer of deference and Mr. Hunt's failure to show the state court decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in state court, the undersigned recommends that the Court **DENY** Ground Three on the merits.

### D.    Grounds Four and Five

In Ground Four, Petitioner asserts that the trial court breached his plea agreement "when it sentenced him for a repeat violent offender specification to which he did not plead guilty," thereby violating his due process rights. (ECF Doc. 1, p. 11.) In Ground Five, Petitioner argues that the trial court's alleged failure to "merge tampering with the evidence and gross abuse of a corpse as allied offenses of similar import" violated his double jeopardy and due process protections. (*Id.* at 12.) Respondent contends that both Grounds Four and Five are procedurally defaulted because these issues are waived due to Petitioner's failure to comply with Ohio's contemporaneous objection rule. (ECF Doc. 7, pp. 26-28.) Petitioner counters that neither are defaulted, and both should prevail on the merits. (ECF Doc. 12, pp. 26-31.) For the reasons set

forth below, the undersigned concludes that Grounds Four and Five should be **DISMISSED** based on procedural default.

### 1.  Grounds Four and Five are Procedurally Defaulted for Failure to Comply with State Procedural Rules

A petitioner may procedurally default by failing "to comply with state procedural rules in presenting his claim to the appropriate state court." *See Williams*, 460 F.3d at 806.  This is the basis upon which Respondent argues Petitioner has procedurally defaulted Grounds Four and Five.  To assess procedural default on this basis, courts in this circuit apply the four-prong *Maupin* analysis.  *See Williams*, 460 F.3d at 807 (citing *Maupin*, 785 F.2d at 138).

Under the first three prongs of the *Maupin* analysis, this Court must determine whether Mr. Hunt failed to comply with a state procedural rule, whether the state court enforced the procedural rule, and whether the procedural rule is an adequate and independent state ground on which the state can foreclose review.  *See* 785 F.2d at 138.  All three prongs are met here.

In Ohio, a criminal defendant must make a contemporaneous objection to an alleged trial court error or forfeit the claim for appellate review.  *State v. Rogers*, 143 Ohio St. 3d 385, 391 (Ohio 2015); *see also Osborne v. Ohio,* 495 U.S. 103, 124 (1990) (recognizing Ohio's contemporaneous objection rule).  Appellate review of forfeited claims is permitted only under a deferential "plain error" standard.  *Rogers*, 143 Ohio St.3d at 391-92; Ohio Crim. R. 52(b).

For purposes of procedural default under federal habeas review, the Sixth Circuit found Ohio's contemporaneous objection rule is a procedural rule that provides an independent and adequate state ground to foreclose review.  *See Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005).  Importantly, a court's "plain error" review on forfeited issues is not inconsistent with procedural default.  *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) ("[T]his Court has held that [an Ohio] court's plain error analysis does not save a petitioner from procedural

default. . . . Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits.").

Here, the state court of appeals held that Mr. Hunt was required to raise the two proposed assignments of error in his 26(b) appeal as objections to the trial court at sentencing, and that he therefore "forfeited all but plain error" on appellate review, explaining:

> Hunt's first proposed assignment of error takes issue with the RVO specification in his case. Hunt initially couches his argument as a breach of the plea agreement by the trial court when the court sentenced Hunt for the RVO specification. . . . Hunt did not raise this issue before the trial court, therefore he has forfeited all but plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B).

And:

> [The] alleged error [regarding allied offenses] was not raised before the trial court when it could have been timely considered.  Therefore, Hunt has forfeited all but plain error regarding this issue.

*Hunt*, 145 N.E.3d at 1216-17, 1220.

The first three prongs of the *Maupin* analysis are met because Petitioner failed to comply with the contemporaneous objection rule, *Osborne*, 495 U.S. at 124, the appellate court actually enforced the rule, *Hunt*, 145 N.E.3d at 1216-17, 1220, and the rule constitutes an "independent and adequate" state ground foreclosing federal review, *Rogers*, 143 Ohio St.3d at 391-92. Because the first three prongs have been met, the Court must find the claims in Grounds Four and Five of the Petition are procedurally defaulted unless Mr. Hunt shows "cause" excusing his failure to raise the claim in accordance with Ohio's contemporaneous objection rule and actual prejudice resulting from the alleged violations.  *Maupin*, 785 F.2d at 138.

Before addressing the issues of cause and prejudice, the undersigned observes that the record demonstrates additional bases for procedural default on Grounds Four and Five of the Petition.  First, neither claim was raised on direct appeal and presented at every level of the state

court system.  *See Baston*, 282 F.Supp.2d at 661.  Second, even in his Rule 26(B) application to reopen, Petitioner did not fairly present the constitutional claims in Ground Four to the state courts.  In Ground Four, he asserts that the trial court violated his due process rights when it sentenced him for an RVO specification for which he did not plead guilty.  (ECF Doc. 1, p. 11.)  But the underlying assignment of error in his Rule 26(B) application is argued under state law only, without reference to his due process rights under the Fifth and Fourteenth Amendments the U.S. Constitution.  (ECF Doc. 7-1, pp. 250-55.)  Thus, he did not fairly present that claim to the state courts.  *Nian*, 994 F.3d at 752.

For the reasons stated above, the undersigned finds the claims asserted in Grounds Four and Five were procedurally defaulted.

### 2.  Procedural Default Should Not Be Excused

Turning to the fourth prong of *Maupin*, the undersigned looks to whether Petitioner has shown cause for his failure to follow the procedural requirements of Ohio's contemporaneous objection rule—here, by raising the relevant challenge at the trial level—and that he was actually prejudiced by the constitutional error alleged in Grounds Four and Five.  785 F.2d at 138; *see also Coleman*, 501 U.S. at 750 (to excuse procedural default, a petitioner must: show cause for the default and demonstrate that actual prejudice resulted from the alleged violation of federal law; or show there will be a fundamental miscarriage of justice if the claims are not considered).

Petitioner does not attempt to show cause or actual prejudice to support excusing his procedural default on Grounds Four or Five (ECF Doc. 12, pp. 26-27; 28-29), and he has therefore waived any such argument, *see McPherson*, 125 F.3d at 995-96.  But even if Petitioner had not waived the argument, the record does not support a finding of cause to excuse the procedural default.

To establish "cause" to excuse procedural default, a petitioner must point to "something external . . . that cannot be fairly attributed to him" and "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488). The Supreme Court has explained:

> Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

*Murray*, 477 U.S. at 492. While "[a]ttorney error that constitutes ineffective assistance of counsel" *may* serve as "cause" to overcome procedural default, *Coleman*, 501 U.S. at 754, an attorney's "ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error,'" *id.* at 753 (quoting *Murray*, 477 U.S. at 488).

While "[a]ttorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default, *Coleman*, 501 U.S. at 754, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective assistance claim *itself* is procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *see also Landrum v. Mitchell,* 625 F.3d 905, 916 (6th Cir. 2010).

Petitioner did not assert in his direct appeal that trial counsel was ineffective for failing to contemporaneously object to (1) his sentencing on the RVO specification or (2) the failure to merge his convictions for tampering with evidence and gross abuse of a corpse. *See Hunt*, 145 N.E.3d at 1216-17, 1220; (ECF Doc. 7-1, pp. 43-63.) He likewise did not argue in his Rule 26(B) motion that appellate counsel was ineffective for failing to allege *ineffective assistance of trial counsel* on those grounds in the direct appeal. (ECF Doc. 7-1, pp. 249-58.) Instead, he argued that appellate counsel was ineffective for not *independently raising* his challenges to the

RVO specification and failure to merge in the direct appeal, without addressing trial counsel's obligation to raise those issues as contemporaneous objections at sentencing. (*Id.*) Petitioner has thus procedurally defaulted any potential claim that trial counsel's failure to raise those contemporaneous objections constitutes "cause" to excuse his procedural default.

For the reasons set forth above, the undersigned finds the claims in Grounds Four and Five were procedurally defaulted, and that Mr. Hunt has not met his burden to show cause and prejudice excuse the default. Accordingly, the undersigned recommends that the Court **DISMISS** Grounds Four and Five based on procedural default. [6]

### IV.     Recommendation

For the reasons stated above, the undersigned recommends that the Court **DISMISS and/or DENY** Grounds One and Two as procedurally defaulted, non-cognizable, and/or without merit, **DENY** Ground Three as without merit, and **DISMISS** Grounds Four and Five as procedurally defaulted.

Dated: January 23, 2024

/s/ Amanda M. Knapp
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

---

[6] In light of Mr. Hunt's procedural default of Grounds Four and Five, it is unnecessary to consider Respondent's alternative arguments for denial of Grounds Four and Five on the merits.